IN THE UNITED STATES DITRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
AT ABINGDON

| | |
|---|---|
| STEVAN K. RASH, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MAIN STREET ACQUISITION CORP. )<br>EMILY WOODS and )<br>DOMINION LAW ASSOCIATES, )<br>)<br>Defendants. ) | Civil Action No. 7:12CV225<br><br>Jury Trial Demanded |

## COMPLAINT

### JURISDICTION AND VENUE

1. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and pursuant to 15 U.S.C. § 1692k(d).

2. This action arises out of Defendants' numerous and repeated violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq. (hereinafter referred to as "FDCPA"), in their illegal efforts to collect a consumer debt from Plaintiff.

3. Venue is proper in this District because the acts and transactions occurred here and the Plaintiff resides here.

### PARTIES

4. Plaintiff Stevan K. Rash (hereinafter "Plaintiff") is a natural person who resides in Wythe County, Virginia, and a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

5. Defendant Main Street Acquisitions Corp., (hereinafter "Defendant MSAC") is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and a for-profit corporation and

may be served through its registered agent as follows: Registered Agents Legal Services, Ltd., 112 North Curry Street, Carson City, NV 89703.

6. Defendant Dominion Law Associates PLLC, (hereinafter "Defendant Dominion") is a law firm and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6), and may be served through its registered agent as follows: William A. Lascara, Pender & Coward, P.C., 222 Central Park Avenue, Central Park Avenue, 23462.

7. Defendant Dominion is hired by and assists Defendant MSAC in collecting its debts and in filing State Court lawsuits against consumers. Defendant Dominion is an agent of Defendant MSAC.

8. Defendant Emily Woods (hereinafter "Defendant Woods") is a natural person and is employed by Defendant MSAC as Assistant Vice President and is a "debt collector" as that term is defined by 15 U.S.C. §1692a(6), and may be served at her business address: Main Street Acquisitions Corporation, 3950 Johns Creek Ct., Suwanee, GA 30024.

9. Defendant MSAC, Defendant Dominion and Defendant Woods may at times be referred to, collectively, as "the Defendants."

## FACTUAL ALLEGATIONS

10. Defendant MSAC is engaged in the business of purchasing charged-off consumer debts and attempting to collect them from consumers.

11. Defendant MSAC pays pennies on the dollar for the debts it purchases.

12. Defendant MSAC makes a business decision not to obtain a copy of the written contracts signed by consumers or other evidence of the alleged debt when purchasing charged-off consumer debts or prior to filing State court collection lawsuits against consumers.

13. Defendant MSAC made such a business decision with regard to Plaintiff, retaining a law firm (Defendant Dominion) to file a State court action in an attempt to collect a debt against Plaintiff.

14. Defendant Dominion makes a business decision not to obtain a copy of the written contracts signed by consumers or other evidence of the alleged debt prior to filing State court collection lawsuits against consumers.

15. The Defendants have alleged in a prior State court lawsuit, that Plaintiff incurred an obligation to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family or household purposes, and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5), namely, a credit card debt originally owed to, or serviced by, HSBC, HSBC Card Services (III) Inc., or their assignees (hereinafter "HSBC").

16. Per Defendant MSAC's records, on June 30, 2009, Plaintiff's alleged debt was consigned, sold or otherwise transferred to Defendant MSAC for collection from Plaintiff.

17. When purchasing charged-off consumer debts, Defendant MSAC makes an intentional business decision not to obtain knowledge as to whether a written Contract existed between the original creditor of the debt and the consumer, or if there was other documentation showing when or how the debt was incurred, or anything beyond very rudimentary information (i.e., the consumer's name, last known address, telephone number, social security number, amount due, name of original creditor, original account number, and current owner of the debt), which would allow them to properly calculate the amount of debt owed by a consumer at the time they file a collection lawsuit.

18. The lack of documentation that debt buyers such as the Defendant MSAC receive when they purchased the debt is reflected in the price of the debt, sometimes a little as a few pennies on the dollar.

19. When Defendant MSAC bought the debt they allege is owed by Plaintiff, they intentionally made a business decision not to receive any of the basic documents or evidence needed to demonstrate that the amount they claimed that were due from Plaintiff, as either principal or interest, was actually owed by him, and they did not possess any such documents as of the date they filed the State court action through its agent, Defendant Dominion.

20. Specifically, at the time Defendant MSAC purchased Plaintiff's alleged Account, they did not receive any documents which (a) could be used as evidence to show, in a court of law, that Plaintiff had entered into a contract with any entity creating the debt or opening an Account, (b) show how the amount claimed as due was calculated or what Plaintiff received in return for incurring the alleged debt, (c) show how the pre-judgment interest on the debt was to be calculated or whether Defendants were entitled to prejudgment interest and if so at what rate and from what date, and (d) show when the debt went into default and what acts by Plaintiff caused the alleged default, and they did not possess any such documents as of the date they filed the State court action.

21. When Defendant MSAC purchased Plaintiff's alleged Account they did not receive any supporting documentation of the debt, including, but not limited to, (a) the alleged underlying Contract between HSBC and Plaintiff, (b) anything bearing Plaintiff's signature binding him to any contractual obligation, (c) any documentation regarding what, if anything, Plaintiff purchased or when he made any purchase, (d) monthly billing statements showing any purchases made by Plaintiff, (e) any history of the payments made on the account, (f) any documents showing how the amount of the alleged debt was calculated, or (g) any information which informs or shows them which portion of the alleged debt was principal and which portion was interest.

22. Instead, when Defendant MSAC purchased the Account, all they received was the aforementioned limited information about Plaintiff and the alleged debt, which was transmitted electronically as part of a spreadsheet.

23. Prior to the Defendants filing the State court collection lawsuit against Plaintiff, they failed to obtain any supporting documentation of the debt, including, but not limited to, (a) the alleged underlying Contract between HSBC and Plaintiff, (b) anything bearing Plaintiff's signature, (c) any documentation regarding what Plaintiff purchased or when he made a purchase, (d) a payment history, or (e) documents showing how the amount of the alleged debt was calculated.

24. Defendant MSAC and Defendant Dominion have a "pattern and practice" of filing collection lawsuits against consumers in Virginia on debts (a) after making an intentional business decision not to obtain knowledge as to whether a written contract exists between the original creditor and the consumer or whether other documentation exists showing when or how the debt was incurred, (b) prior to making a reasonable and adequate investigation as to whether the consumer owes the amount of debt they are attempting to collect, and (c) by attaching affidavits from individuals whose knowledge of the specifics of the original debt is limited or non-existent. These Defendants do all of this with the intention of either obtaining a default judgment or coercing the consumer into a settlement.

25. Defendant MSAC and Defendant Dominion file the collection lawsuits against Virginia consumers, and have filed such a collection lawsuit against Plaintiff, knowing they do not have the means, and do not intend to obtain the means, to prove the alleged debt.

26. Because debt buyers such as Defendant MSAC and debt collection attorneys such as Defendant Dominion lack documentation necessary to establish a claim based on monies advanced or loaned, they often file collection lawsuits against Virginia consumers on a

sworn account, and attempt to support the claim with a false, deceptive and misleading affidavit.

27. In a majority of the cases, debt buyers such as Defendant MSAC and debt collection attorneys such as Defendant Dominion obtain a default judgment and the sufficiency of the debt buyer's affidavit and the related account are not challenged.

28. In those few instances where the consumer has the wherewithal, means and ability to defend the collection lawsuit, debt buyers such as the Defendant MSAC and debt collection attorneys such as Defendant Dominion usually will dismiss ("non-suit") the case rather than risk having its deceptive practices exposed.

29. Defendant MSAC and Defendant Dominion also engage in a "pattern and practice" of allowing the State Court to schedule pleadings and a trial date; requiring the debtor to file a "Grounds Of Defense" or suffer summary judgment, and requiring the debtor, or his counsel, to appear at the trial date only for the Defendants to inform the State court that it has no witnesses present and is requesting a non-suit (dismissal without prejudice).

30. Upon information and belief, the Defendants request a non-suit in each and every case where a consumer challenges the validity of the debt and refuses to settle or make payment arrangements with the Defendants.

31. With regard to Plaintiff in particular, the Defendants engaged in this pattern of practice, to wit, on May 27, 2011, Defendant MSAC and Defendant Dominion filed a civil lawsuit against Plaintiff in State court seeking judgment to collect money, plus cost, plus prejudgment and post-judgment interest.

32. The Defendants did so despite the fact that they had no evidence showing that Plaintiff owed the amount of debt they were alleging he owed, and did so prior to making a reasonable and adequate investigation as to whether Plaintiff actually owed the amount of debt they were alleging he owed.

33. Further, the Defendants used false, deceptive, misleading practices or means in connection with the civil lawsuit and in certain communications sent by Defendants to Plaintiff relating to that lawsuit and, as a result, violated numerous provisions of the FDCPA.

## MAY 27, 2011 COLLECTION LAWSUIT AND ASSOCIATED COMMUNICATIONS

34. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

35. Within one (1) year prior to the filing of this Complaint, on or about May 27th, 2011, the Defendants, in The Wythe County General District Court, Virginia, caused to be issued a Civil Warrant In Debt (see Attached Exhibit 1); the Defendants also filed a separate sworn Affidavit with the Warrant In Debt (see Attached Exhibit 2) and also filed a separate "Summary Screen" with the Warrant In Debt (see Attached Exhibit 3), which appears to be computer screenshot containing information concerning a debt alleged to be owed by Plaintiff. The Affidavit is largely a regurgitation of the information contained in the "Summary Screen," with additional boilerplate language alleging a debt incurred and a failure to repay that debt.

36. The Warrant In Debt, Affidavit and Summary Screen labeled as Exhibits 1, 2 and 3 will hereinafter be referred to collectively as "Collection Lawsuit."

37. Defendant Dominion sent Plaintiff two letters relating to the Collection Lawsuit. The first letter was sent on May 25, 2011 and was accompanied with a copy of the Warrant In Debt, Affidavit and Summary Screen referenced above (Exhibits 1, 2 and 3). The second letter was sent on August 1, 2011.

## MAY 27, 2011 COLLECTION LAWSUIT

### Warrant In Debt Filed In Collection Lawsuit
### State Court Case Number GV11000443-00

38. The Warrant In Debt was filed and served on Plaintiff in connection with the collection of a debt and in an attempt to collect a debt, and is a "communication" as defined by 15 U.S.C. § 1692a(2).

39. The Warrant in Debt Claims that Plaintiff owes Defendant MSAC "a debt in the sum of $3,004.43 net of any credits, with interest at 6 % from date of 5/30/09 until paid. $56.00 costs and $ .00 attorney's fees with the basis of this claim being . . . nonpayment of an open account with 6% interest from 5/30/09."

40. The Warrant In Debt has a signature that is not legible, however, a typed "DLA-S.J. Zecca" is typed as "Attorney for Plaintiff." There also is a handwritten name directly next to Zecca which appears to read "Leon Terrence."

41. Defendant MSAC did not own the Account related to this Warrant In Debt until June 30, 2009 but claims prejudgment interest from May 30, 2009.

42. In Virginia, an award of prejudgment interest, as opposed to post-judgment interest, is in the sound discretion of the trier of fact. By statute, the court is required to award post-judgment interest. Section 8.01-382 of the Code of Virginia, 1950, as amended. Thus, a request for prejudgment interest from any date is presumptuous, but is allowed under the laws and rules of court in Virginia. However, claiming an amount of prejudgment interest from a date which precedes the date in which the suing party owns the debt, or is entitled to payment on the debt, is misleading and deceptive and an attempt to collect a windfall.

43. The Warrant In Debt thus requests from the State Court, amounts that Defendant MSAC was not entitled to. This was done in hopes that default judgment would be entered against Plaintiff thereby providing Defendants with legal entitlement to collect amounts they would not otherwise be entitled to even if they could prove that Plaintiff properly owed any debt to Defendants.

44. The Warrant In Debt constituted the use of a false, deceptive, and misleading representation or means in connection with collection of the debt to collect or attempt to collect the debt, in violation of 15 U.S.C. §§ 1692e and 1692e(10), and is an unfair or unconscionable means to collect or attempt to collect the debt in violation of 15 U.S.C. § 1692f.

45. By filing the Warrant In Debt with the use of deceptive and misleading representations or means in connection with collection of the debt while unreasonably relying on HSBC or an assignee of HSBC as to the amount of debt allegedly owed by Plaintiff, without knowledge of whether a written contract existed or what it provided, the Defendant MSAC, Defendant Dominion and Defendant Woods communicated credit information to the State court, the general public, and the Plaintiff, which was known or should have been known to be false, in violation of 15 U.S.C. § 1692e(8).

46. By filing the Warrant In Debt requesting an award of judgment in an amount the Defendants were not entitled to under State law, the Defendants communicated credit information to the State court, the general public, and the Plaintiff, which was known or should have been known to be false, in violation of 15 U.S.C. § 1692e(8).

47. By attempting to collect amounts of prejudgment interest in the Warrant In Debt not expressly authorized by the agreement creating the debt or permitted by law, the Defendants violated 15 U.S.C. § 1692f(1).

### Sworn Affidavit Filed With Collection Lawsuit

48. The sworn Affidavit was filed and served in connection with the collection of a debt and in an attempt to collect a debt, and is a "communication" as defined by 15 U.S.C. § 1692a(2).

49. The sworn Affidavit is reproduced verbatim below (also attached as Exhibit 2A):

   STATE OF GEORGIA           )
                              ) ss.
   COUNTY OF GWINNETT    )

   PLAINTIFF'S AFFIDAVIT IN SUPPORT OF CLAIM

   BEFORE ME, personally appeared Emily Woods on behalf of Plaintiff, Main Street Acquisition Corp., a Nevada Corporation, ("Plaintiff") who, after being duly sworn, deposes and says:
   1. I am a competent person over twenty-one (21) years of age and am authorized to execute this affidavit on behalf of Plaintiff. I have personal knowledge of the facts stated herein and they are true and correct.
   2. I am an Assistant Vice President of Plaintiff and the facts recited herein are based upon the electronic business records of the account in question, which are part of Plaintiff's regular business records. These records are kept by Plaintiff in the regular course of business, and it was the regular course of business of Plaintiff for an employee or representative of Plaintiff, with knowledge of the act or event recorded, to make the record or to transmit information thereof to be included in such record, and the record was made at or near the time or reasonably soon thereafter.
   3. Defendant STEVAN K RASH ("Defendant") requested and was issued a Ameritech Platinum MasterCard credit card (account number [XXXX-XXXX-XXXX]-8663) (the "Account") by HSBC Bank Nevada, N.A. or an affiliated entity ("HSBC") on or about February 08, 2006.

4. Defendant utilized the Account to obtain cash products and/or goods and services and HSBC rendered statements of the Account to Defendant.
5. Defendant failed or refused to repay the balance due and owing on the Account.
6. Upon Defendant's default and the charge off of the Account, HSBC internally transferred title to the Account to HSBC Card Services (III) Inc., Plaintiff's predecessor in interest, on or about May 30, 2009 with a balance of $3,004.43.
7. The Account was later sold and assigned to Plaintiff, the current holder and owner of the Account.
8. Plaintiff has made demand for the balance due and owing on the Account, but Defendant has railed or refused to pay.
9. The balance due and owing to Plaintiff by Defendant on the Account is $3,004.43, plus interest at the legal rate per annum from May 30, 2009 and costs.
10. All credits and offsets to which Defendant is entitled have been given. The last payment made by Defendant on the Account was $160.00 on or about September 17, 2008.
11. Upon information and belief, the Account is not past the statute of limitations and has not been discharged in bankruptcy, and Defendant is not an infant or incompetent.
12. Based upon a review of the military service records available through the Department of Defense Manpower Data Center's Military Verification Service, Defendant is not in the military service of the United States.
13. According to Plaintiff's business records, Defendant is a resident of Wythe County, VA.
14. I certify under penalty of perjury and pursuant to the laws of the state of Georgia that the preceding is true and correct to the best of my information and belief.

FURTHER AFFIANT SAYETH NAUGHT.

    Main Street Acquisition Corp.
    By: "(Signature of Emily Woods)"
    Printed Name: Emily Woods
    Its: Assistant Vice President

The forgoing instrument was sworn to and subscribed before me this 17 day of March, 2011 by Emily Woods on behalf of Main Street Acquisition Corp.

He/she is personally known to me or has produced a driver's license as identification and did take an oath.

> "Signature of Notary"
> NOTARY PUBLIC
> My Commission Expires

50. The Affidavit was mailed to Plaintiff in addition to being filed with the State court. It was thus a communication from a debt collector to a consumer that was not a part of a formal pleading in any court. The affidavit did not contain the required notice indicating that the communication was from a debt collector.

51. The Affidavit Sworn by Defendant Woods, filed in the Collection Lawsuit by Defendant Dominion, both as agents of Defendant MSAC, was false, deceptive and misleading to the extent the affiant claims personal knowledge of the account information described in the affidavit and to the extent the affiant asserts that the records of the alleged debt were recorded by MSAC or an agent thereof, at or close to the time that they events recorded occurred.

52. Taken as a whole, even the most sophisticated consumer would think that the Affiant, Defendant Woods, or some agent or employee of Defendant MSAC, had personal knowledge of events that occurred prior to Defendant MSAC acquiring the Account. This cannot be true. For instance, there is no possible way that any employee of Defendant MSAC had knowledge that Plaintiff "utilized the Account to obtain cash products and/or services" as averred in Paragraph 4 of the Affidavit. The same can be said for Paragraphs 3 and 5 of the Affidavit. Defendant MSAC did not own the Account until June 30, 2009, long after any purchases are alleged to have been made on the Account.

53. Defendant MSAC purchases electronic business records of old accounts for pennies on the dollar. Defendant Woods reviews these electronic records and swears out an Affidavit alleging personal knowledge of Plaintiff's Account based on a cursory review of the purchased electronic records. The Affidavit used to prosecute the First Collection Lawsuit was made by Defendant Woods by reproducing the information contained in the electronic record in a purely mechanical way, with no evidence of personal thought or understanding.

54. Defendant Woods produced the Affidavit without any review of any supporting documentation created during the relationship between the original creditor and Plaintiff.

55. The only records held by the Defendant MSAC at the time Defendant Woods signed the sworn Affidavit were computer records, which contained very limited information about Plaintiff and his alleged debt.

56. The only records that Defendant Woods was able to review prior to signing the sworn Affidavit were the limited computer records obtained by the Defendant MSAC from HSBC Card Services (III). Further, HSBC Bank Nevada, N.A., not HSBC Card Services (III), was the original creditor of this Account.

57. Without any records of the originator of the debt available for her review to determine if there was a contract signed by Plaintiff and, if so, whether the amount of the debt as to principal or interest she alleged was owed by Plaintiff in the Affidavit was correct as required under penalty of perjury, it was impossible for Defendant Woods to truthfully make a sworn affidavit as to the correctness of the amount owed, if any, by Plaintiff.

58. Proceeding on this false, misleading and deceptive affidavit, Defendant MSAC hired Defendant Dominion to file a lawsuit knowing it had no ability to prove the allegations which form the basis of the Collection Lawsuit. The Affidavit alleges facts in which none of the Defendants have personal knowledge, despite their assertion to the contrary. This assertion of personal knowledge combined with the allegations contained in the Affidavit would create a false impression in the mind of the least sophisticated consumer that Defendants had the legal right to attempt to collect the debt in the manner and in the amount in which they attempted to collect it. U.S. v. National Financial Services, Inc., 98 F.3d 131, 136 (4th Cir. 1996) ("[E]valuating debt collection practices with an eye to the 'least sophisticated consumer' comports with basic consumer-protection principles: 'The basic purpose of the least-sophisticated-consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd. This standard is consistent with the norms that courts have traditionally applied in consumer-protection law.'" (quoting Clomon v. Jackson, 988 F.2d 1314, 1318 (2nd Cir. 1993)).

59. The sworn affidavit claiming personal knowledge of Plaintiff's Account without such knowledge was an intentional attempt to mislead the State court and Plaintiff into believing that Defendant Woods was someone who had personal knowledge of the amount of debt allegedly owed by Plaintiff and that Plaintiff, in fact, owed the debt, when it was not possible for her to have such personal knowledge.

60. Further, it was an attempt to mislead the State court and Plaintiff into believing that Defendant Woods had an ability to testify to admissible evidence concerning the debt and that this evidence would be admitted under the "Business Records" exception to the rule against the introduction of hearsay evidence. This evidence would not have been

admissible because the foundational requirements of personal knowledge and entry of the record at or near the time of the record's creation did not in fact exist, contrary to the assertions by Defendant Woods in the sworn Affidavit.

61. Defendant MSAC, Defendant Woods, and Defendant Dominion intentionally made a business decision to file the Collection Lawsuit without (a) obtaining knowledge as to whether a written contract existed between HSBC and Plaintiff or if there was other documentation showing when or how the debt was incurred, and (b) making a reasonable and adequate investigation as to whether Plaintiff owed the amount of debt they were attempting to collect, but to rely solely on other parties for this information.

62. The Defendants' business decision to rely entirely on HSBC or an assignee of HSBC as to the amount of debt allegedly owed by Plaintiff without (a) obtaining knowledge as to whether a written contract existed between HSBC and Plaintiff or if there was other documentation showing when or how the debt was incurred, and (b) making a reasonable and adequate investigation as to whether Plaintiff owed the amount of debt they were attempting to collect, was not a procedure reasonably adapted to avoid using a deceptive or misleading representation or means in connection with collection of the debt.

63. By making a business decision to intentionally not (a) obtain knowledge as to whether a written contract existed between HSBC and Plaintiff or if there was other documentation showing when or how the debt was incurred, and (b) make a reasonable and adequate investigation as to whether Plaintiff owed the amount of debt they were attempting to collect, prior to filing a collection lawsuit, the Defendants intentionally used a deceptive and misleading representation in connection with collection of the debt as to the amount allegedly owed by Plaintiff in violation of 15 U.S.C. §1692e and 1692(e)10 and is an unfair or unconscionable means to collect or attempt to collect the debt in violation of 15 U.S.C. § 1692f.

64. The Affidavit filed in connection with the Collection Lawsuit alleged information that the Defendants knew or should have known was not true and therefore was the use of a false, deceptive, and misleading representation or means in connection with collection of the debt to collect or attempt to collect the debt, in violation of 15 U.S.C. §§ 1692e and 1692e(10), and is an unfair or unconscionable means to collect or attempt to collect the debt in violation of 15 U.S.C. § 1692f.

65. By attempting to collect amounts of prejudgment interest in the sworn Affidavit not expressly authorized by the agreement creating the debt or permitted by law, the Defendants violated 15 U.S.C. § 1692f(1).

66. By sending the sworn affidavit to Plaintiff without including in that affidavit the required notice indicating that the communication was from a debt collector, the Defendants violated 15 U.S.C. § 1692(e)(11).

67. By filing the Collection Lawsuit based on a false and misleading affidavit in violation of the FDCPA, the Defendants caused Plaintiff to be served with said lawsuit. The Warrant In Debt was served upon Plaintiff by a Wythe County Sherriff's Deputy known to Plaintiff since Plaintiff and the Deputy were in high school together. The Deputy had been a friend of Plaintiff for more than forty (40) years.

### May 25, 2012 Letter Sent in Reference to Collection Lawsuit

68. Upon filing the Collection Lawsuit, Defendant Dominion sent Plaintiff a letter along with a copy of the Warrant In Debt. This letter, (Attached as Exhibit 4), dated May 25, 2011, encourages Plaintiff to make payment in full at least five days prior to the return date set by the State court. The amount requested as "payment in full" includes an amount of prejudgment interest at 6% from May 30, 2009.

69. The May 25, 2011 letter was sent to Plaintiff in an attempt to collect a debt, and is a "communication" as defined by 15 U.S.C. § 1692a(2).

70. The May 25, 2011 letter was misleading because it requested Plaintiff to pay amounts including prejudgment interest when such an award of interest is in the discretion of the court or jury trying the case. Further, just as with the Warrant In Debt and Affidavit, it presumes that Defendant MSAC is entitled to prejudgment interest on a debt allegedly owed from a date that precedes Defendant MSAC obtaining legal title to the debt.

71. In sum, Defendant Dominion, on behalf of and acting as an agent of Defendant MSAC, and with the assistance of Defendant Woods, attempted to obtain prejudgment interest in an amount that they were not legally entitled to. Defendants simply cannot show that Plaintiff had an obligation to pay interest to Defendant MSAC on or before May 30, 2009.

72. Defendant Dominion sent the May 25, 2011 letter along with a copy of Warrant In Debt, using the additional leverage of a pending lawsuit to attempt to coerce payments from Plaintiff. The Defendants cannot prove, and do not intend to prove, Defendant MSAC was entitled to collect the amount they attempted to collect, and further, the Defendants attempted to collect an amount of prejudgment interest that Defendant MSAC, by law, were not entitled to collect.

73. The May 25, 2011 letter constituted the use of a false, deceptive, and misleading representation or means in connection with collection of the debt to collect or attempt to collect the debt, in violation of 15 U.S.C. §§ 1692e and 1692e(10), and is an unfair or unconscionable means to collect or attempt to collect the debt in violation of 15 U.S.C. § 1692f.

74. By attempting to collect amounts of prejudgment interest in the May 25, 2011 Letter, not expressly authorized by the agreement creating the debt or permitted by law, the Defendants violated 15 U.S.C. § 1692f(1).

75. By falsely representing the amount of the debt in the May 25, 2011 Letter by requesting payment of an amount including prejudgment interest that the Defendants were not entitled to, the Defendants violated 15 U.S.C. § 1692e(2)(A).

### August 1, 2011 Letter Sent in Reference to Collection Lawsuit

76. During the pendency of the Collection Lawsuit, Defendant Dominion sent an additional letter, dated August 1, 2011, asking that Plaintiff file his Grounds of Defense with the State court, and to send Defendant Dominion a copy of said Grounds of Defense. Defendant Dominion provided Plaintiff with a postage pre-paid envelope to mail the Grounds of Defense to Defendant Dominion.

77. The August 1, 2011 letter was sent to Plaintiff in an attempt to collect a debt, and is a "communication" as defined by 15 U.S.C. § 1692a(2).

78. This August 1, 2011 request was made by Defendant Dominion prior to filing its Bill of Particulars. Defendant Dominion filed its bill of particulars with the Court on August 4, 2011. Defendant Dominion certified that they delivered a copy to Plaintiff on August 8, 2011.

79. Under Rule 1:4 of the Supreme Court of Virginia, anything pled in the Bill of Particulars that is not denied in the Grounds of Defense is deemed to be admitted by the person defending against the debt collection lawsuit.

80. The August 1, 2011 letter was misleading because the letter requests Plaintiff to submit his Grounds of Defense to the State court prior to Defendant Dominion filing its Bill of Particulars.

81. This letter was sent to Plaintiff when he was unrepresented by counsel.

82. Defendant Dominion sent this letter, knowing or having reason to know, that if Plaintiff were to file his Grounds of Defense prior to Defendant Dominion filing its Bill of Particulars, anything mentioned in the Bill of Particulars not denied in the Grounds of Defense could be taken as admitted in the Collection Lawsuit. Under such circumstances, Plaintiff could not have intelligently responded to Defendant Dominion's Bill of Particulars and thus would have been prejudiced had he filed his Grounds of Defense at the time directed by Defendant Dominion.

83. Upon information and belief, Defendant Dominion sent the August 1, 2011 letter to gain an unfair tactical advantage at the trial of the Collection Lawsuit.

84. The August 1, 2011 letter constituted the use of a false, deceptive, and misleading representation or means in connection with collection of the debt to collect or attempt to collect the debt, in violation of 15 U.S.C. §§ 1692e and 1692e(10), and is an unfair or unconscionable means to collect or attempt to collect the debt in violation of 15 U.S.C. § 1692f.

### Defense and Outcome of Collection Lawsuit

1. Plaintiff retained counsel in order to defend against the Collection Lawsuit.

2. Plaintiff, by Counsel, disputed the debt alleged in the Collection Lawsuit. The State court set a schedule for pleadings and a return date for trial of October 17, 2011. The State court required Defendant Dominion to file a Bill of Particulars by a date certain, which they did on August 8, 2011. The State Court also required the Plaintiff, by counsel, to file a Grounds of Defense by September 26, 2011, which was filed on September 23, 2011.

3. The Collection Lawsuit was continued by agreement of the parties due to a scheduling conflict from October 17, 2011 to December 12, 2011. When counsel for Plaintiff appeared for trial on December 12, 2011, local counsel hired by Defendant Dominion appeared in State court and requested a non-suit of the Collection Lawsuit.

4. The above-detailed conduct by Defendants in connection with collection of the debt and in an attempt to collect the debt was conduct in violation of numerous and multiple provisions of the FDCPA including, but not limited to the above-cited provisions of the FDCPA.

5. Plaintiff has suffered actual damages as a result of these illegal communications, lawsuit and collection attempts by Defendants in the form of attorney's fees, costs and other

expenses in defending a lawsuit, anger, anxiety, emotional distress, fear, frustration, upset, humiliation, and embarrassment, amongst other emotions.

6. Plaintiff is informed and believes and, therefore, alleges that Defendants knowingly and intentionally engaged in harassing, abusive, false, misleading, unfair, deceptive and illegal debt collection practices.

7. The Defendants failed to maintain (i.e., actually employ or implement) procedures to avoid making errors and violating the FDCPA prior to, or during, the collection of the alleged debt against Plaintiff.

## Respondeat Superior Liability

8. In addition to their individual liability under the FDCPA, the acts and omissions of Defendants Dominion and Woods as agents for Defendant MSAC and who communicated with Plaintiff as described herein, were committed within the time and space limits of their agency relationship with their principals, Defendant MSAC.

9. The acts and omissions by Defendants Dominion and Woods were incidental to, or of the same general nature as, the responsibilities they were authorized to perform by Defendant MSAC in collecting consumer debts.

10. By committing these acts and omissions against Plaintiff, Defendants Dominion and Woods were motivated to benefit their principals, Defendant MSAC.

11. Defendant MSAC is therefore liable to Plaintiff through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors and omissions done in violation of federal law by the debt collectors employed as agents by the Encore Defendants including, but not limited to violations of the FDCPA, in their attempts to collect the debt from Plaintiff.

## DEMAND FOR TRIAL BY JURY

12. Plaintiff is entitled to and hereby respectfully demands a trial by jury on all issues so triable. US Const. amend. 7. Fed.R.Civ.P. 38.

# CAUSES OF ACTION

## COUNT I.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT 15 U.S.C. §§ 1692 et seq.

13. Plaintiff incorporates by reference all of the above paragraphs as though fully stated herein.

14. The foregoing acts and omissions of Defendants constitute numerous and multiple violations of the FDCPA including, but not limited to each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. §§ 1692 et seq., with respect to Plaintiff.

15. As a result of Defendants' multiple violations of the FDCPA, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1), in an amount to be determined at trial by a jury; statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A) in the amount of $1,000.00; and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from each and every Defendant.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against each and every Defendant:

## COUNT I.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT 15 U.S.C. §§ 1692 et seq.

- for an award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1) against each and every Defendant and for Plaintiff, in an amount to be determined at trial by a jury;
- for an award of statutory damages pursuant to 15 U.S.C. §1692k(a)(2)(A) in the amount of $1,000.00 against each and every Defendant, and for Plaintiff;
- for an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) against each and every Defendant and for Plaintiff; and
- for such other and further relief as may be just and proper.

5/22/2012                                Respectfully submitted,

                                         STEVAN K. RASH

                                         _____
                                         Brandon Snodgrass, Esq.
                                         Virginia State Bar ID # 47894
                                         Attorney for Plaintiff
                                         Snodgrass Law Firm
                                         P. O. Box 1417
                                         Abingdon, VA 24212
                                         (276) 676-2660
                                         bsnodgrass@snodgrasslawfirm.com

                                         _____
                                         Matthew L. Felty, Esq.
                                         Virginia State Bar ID # 74873
                                         Snodgrass Law Firm
                                         Attorney for Plaintiff
                                         P. O. Box 1417
                                         Abingdon, VA 24212
                                         (276) 676-2660
                                         mfelty@snodgrasslawfirm.com